## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### KENDRICK v. THE COMMONWEALTH.

March 27th, 1884.

CRIMINAL PROCEEDINGS—*Unlawful gaming—Self crimination—Personal disgrace.*—K was sworn and sent to the grand jury to testify as to charge against L of unlawful gaming, and refused to answer questions propounded by grand jury, because the answer would tend to criminate and disgrace himself.

HELD (*by a majority of the court*):

   Acts 1877–78, ch. 10, sections 20 and 22, page 51, New Criminal Procedure, secures full protection to witnesses testifying in prosecutions for unlawful gaming, and K is not justified in refusing to testify on the ground that his answer will tend to criminate and disgrace him.

HELD (*by Lacy, J., and Richardson, J.*) :

   By Virginia constitution, article I, section I, and by amendment V, to U. S. constitution, no man is compellable to give evidence against himself in any criminal case. The legislature cannot compel a person to give evidence against himself by providing immunity for the witness.

Error to judgment of hustings court of city of Richmond, rendered on the 13th February, 1884, sentencing William Kendrick to pay a fine of fifty dollars, and to be confined in jail for twenty days, for a contempt of court, in refusing to answer a certain question propounded to him by the grand jury, said Kendrick having been sworn in court and sent to the grand jury to give evidence on a charge against Thomas Lyon, who had been remanded to said court for indictment and trial for keeping and exhibit-

ing the game of faro. To this judgment Kendrick obtained a writ of error and *supersedeas.*

*S. M.* and *C. L. Page,* for plaintiff in error.

*Attorney-General F. S. Blair,* for the Commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

The bill of exceptions signed by the hustings court certifies that William Kendrick, then being before the grand jury to answer questions and give evidence on a bill of indictment which had been preferred and sent to the said grand jury in the said hustings court against Thomas Lyon, for unlawfully keeping and maintaining within the jurisdiction of the said court a certain gaming-table, commonly called a faro bank, and for then and there contributing money to allure other persons to bet at said game, he, the said William Kendrick, was asked by the grand jury the following question :

"Tell all you know about any person keeping or exhibiting, or being a partner, or concerned in interest in the keeping or exhibiting of any faro bank, or table A B C, or E O table, keno-table, or any other table of a like kind, or of any other unlawful gaming; whether the table or game be played with cards, dice or otherwise, on the 11th day of August, 1883, or at any time within twelve months previous thereto, at the house number 307, on Seventh between Broad and Marshall streets." And the said William Kendrick, to the question so put to him by the said grand jury, for answer thereto said as follows: "I cannot answer that question, because the answer to it would *tend* to criminate me, and would disgrace me."

And the said William Kendrick, thus declining and refusing to answer the said question as put by the grand jury,

he, the said William Kendrick, was then and there reported to the honorable court by the grand jury; whereupon the judge of the said court read over to the said William Kendrick sections 20 and 22 of chapter 10 of the Criminal Code of Virginia, at the same time informing the said William Kendrick that, in the opinion of the court, he, the said William Kendrick, was fully protected; but the said William Kendrick, for the same reasons previously given, declined to answer the question aforesaid as propounded to him by the grand jury. Whereupon, for his said declining and refusing to answer the said question so asked him by the grand jury, as required by the statute, section 20, chapter 10, of the Criminal Code, the said William Kendrick was, by the said hustings court, under the said 20th section, fined fifty dollars, and sentenced to confinement in the jail of the said city for a term of twenty days. To this judgment of the said hustings court, a writ of error was awarded by one of the judges of this court.

The question we have to decide is, whether upon the facts, as set out in the bill of exceptions. the hustings court was justified in requiring the witness to answer the question as asked; and, upon his failure to do so, to fine and imprison him.

The tenth section of Article I of the constitution of Virginia ordains: "That in all capital or criminal prosecutions a man hath a right to demand the cause and nature of his accusation; to be confronted with the accusers and witnesses; to call for evidence in his favor, and to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty; *nor can he be compelled to give evidence against himself;* that no man be deprived of his liberty except by the law of the land or the judgment of his peers." This section of the Bill of Rights of Virginia incorporated in her organic law proclaims and renders inviolable "a great, practical,

individual right, that no man should, anywhere, before any tribunal, in any proceedings, be compelled to give evidence tending to criminate himself, either in that or any other proceedings"; and it is a precious, a most inestimable privilege and power of self-protection by the citizen against governmental oppressions, and especially such as may be exercised under the pretence and by the abuse of judicial power; and it ought to be construed with the utmost liberality consistent with the due execution of the laws and the safety of society. But while it is a settled maxim of law that no man is bound to criminate himself, it is also a rule of law and a necessity of public justice, that every person is compellable to bear testimony in the administration of the laws by the duly constituted courts of the country.

Chief-Justice Marshall said, in the famous Burr trial: "When two principles come in conflict with each other, the court must give them BOTH a reasonable construction, so as to *preserve them both* to a reasonable extent. The principle which entitles the *government* to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded. When a question is propounded, it belongs to the court to *consider and to decide* whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judge would strip him of that privilege which the law allows him, and which he claims. It follows necessarily then, from this statement of things, that if the question be of

such a description, that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such a case the witness must himself judge what his answer will be; and if he say on oath, that he cannot answer without accusing himself, he cannot be compelled to answer."

In the case of the *People* v. *Mather*, 4 Wend. 229, Marcy, J., said: " Where a witness claims to be excused from answering because his answer will have a tendency to implicate him in a crime or misdemeanor, or will expose him to a penalty or forfeiture, then the court is to determine whether the answer he may give to the question can criminate him, directly or indirectly, by furnishing direct evidence of his guilt, or by establishing one of many facts which, together, may constitute a chain of testimony sufficient to warrant his conviction, but which one fact, of itself, could not produce such result; and if they think the answer *may* in any way criminate him, they must allow his privilege without exacting from him to explain how he would be criminated by the answer which the truth may oblige him to give. If the witness was obliged to show *how* the effect is produced, the protection would at once be annihilated."

Whether the constitutional privilege of the witness can be taken away by the legislature at all, on any terms of indemnity, was expressly left undecided by this court, in *Cullen* v. *Commonwealth*, 24 Gratt. 624: " But (the court

said) we are clearly of opinion that before it can be taken away there must be absolute indemnity provided, and that nothing short of complete amnesty to the witness, an absolute wiping out of the offence as to him, so that he can no longer be prosecuted for it, will furnish that indemnity."

In the late case of *Temple* v. *The Commonwealth,* 75 Va. (1 Matthews, 892), Judge Christian delivering the opinion of the court, said, "the witness ought not, in any case, be compelled to answer, after declaring on oath that such answer may criminate himself, . . unless it clearly appears to the court that he is mistaken."

In the same case Judge Staples said, "If this were a prosecution for unlawful gaming, as defined by our statutes, I think the witness would be bound to testify, for he is fully protected by the provisions of the 20th section, already adverted to." ·

The case at bar is a prosecution for unlawful gaming—the plaintiff in error appealing for relief and immunity from fine and imprisonment, adjudged against him for contempt of the hustings court of the city of Richmond in refusing to answer a question put to him by the grand jury, and explained to him by the court, with its opinion, that the 20th and 22d sections of chapter 10, page 51, New Criminal Procedure 1878, afforded and secured to him absolute indemnity and complete amnesty against any possible penalty or procedure against him for any crimination or implication in the offence indicated by the pending prosecution in which he was called to testify.   Section 20 enacts : " No person, prosecuted for unlawful gaming, shall be competent to testify against a witness for the Commonwealth in such prosecution touching any unlawful gaming committed by him prior to the commencement of such prosecution; nor shall any witness, giving evidence either before the grand jury or the court in such prosecution, be ever proceeded against for any offence of unlawful gaming com-

mitted by him at the time and place indicated in such prosecution ; but such witness shall be compelled to testify, and for refusing to answer questions, may, by the court, be fined a sum not exceeding five hundred dollars, and be imprisoned for a term not exceeding six months." The 22d section is : " In a criminal prosecution, other than for perjury or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination."

We think that these provisions of the law (made and provided, doubtless, to meet the very exigency of cases like the one under consideration), gives to the witness full indemnity and assurance against any liability to prosecution for a disclosure which he could be called upon to make as to his own implication, or complicity in the unlawful gaming as to which he was sworn and sent to the grand jury to testify; it was the duty of the witness to testify, and, therefore, we do not think the hustings court erred in its judgment complained of.

The witness added to his plea for refusing to answer, that it would *disgrace* him. This is a question of character. It was said by Lord Eldon (1 Merivale, 400): " Upon a question of character, I hold that supposing a man to be liable to a penalty or forfeiture, provided he is sued within a limited time, and that the suit is not commenced till after the limitation expires, he is bound to answer fully, notwithstanding the answer *may tend* to cast a very great degree of reflection upon his character and conduct."

A witness who is called by the Commonwealth to testify as to violations of her laws, within his observation, may always assert his constitutional privilege and immunity from prosecution and punishment for his own implication in the unlawful act as to which he is compelled to testify; but the courts of Virginia will not recognize the Spartan morality which deprecates not the *perpetration,* but only the *exposure* of crime.

Upon the whole case, presented in the record, under review, we are of opinion that there is no error in the judgment of the hustings court complained of, and the same must be affirmed.

LEWIS, P., and HINTON, J., concurred in the opinion of FAUNTLEROY, J.

LACY, J., dissenting, said : I do not concur in the opinion of the majority in this case. The constitution of Virginia, § 10, Art. I, provides that in all capital or criminal prosecutions no man can be compelled to give evidence against himself; and the same provision is to be found in the constitution of the United States ; in the fifth article of the amendments to the same : "no person shall be compelled in any criminal case to be a witness against himself."

This is a fundamental principle of our government, which has been recognized from the earliest days. On the 15th day of June, 1807, during the progress of the celebrated Burr trial a witness (Willie) was called to testify concerning a certain letter in cypher. He was asked by the government whether he knew this letter was written by Aaron Burr or some one under his authority. The witness refused to answer because it might criminate himself. Chief-Justice Marshall, after hearing the arguments of counsel on both sides, who were the foremost lawyers, and among the ablest in the country, decided the question on the 18th of June following.

He said : " It is a settled maxim of the law that no man is bound to criminate himself. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any of the links in a chain of testimony against himself. It would seem that the court ought never to compel a witness to give an answer which discloses a fact

that would form a necessary and essential part of a crime which is punishable by the laws.   It is the province of the court to judge whether any direct answer to a question which may be proposed will furnish evidence against the witness.   If such answer *may* disclose a fact which forms a necessary and essential link in the testimony which would be sufficient to convict him of any crime, *he is not bound to answer it so as to form matter for that conviction.*   In such case the witness must himself judge what his answer will be; and if he say on oath that he cannot answer without accusing himself, he cannot be compelled to answer."

These views have been held sound until the present day. In the case in this court of *Cullen* v. *The Commonwealth,* Dr. Cullen, who was alleged to have acted as surgeon in a duel which was fought to the death in this State, within recent years, had declined to testify before the grand jury upon the same ground as the witness Willie.  The court below had committed him for contempt, and upon appeal to this court the court below was reversed and the witness discharged.   Afterwards, in the case of *Temple* v. *The Commonwealth,* 75 Va. 892, the same question arose, and the same rule was followed by a majority of this court; though the judgment was reversed on other grounds, all judges expressed doubts in that case of the correctness of the decision in the Cullen case.

In this case it is alleged that the Commonwealth has given complete indemnity to the accused, and that he may therefore testify without criminating himself.   The witness does not so regard the act of the legislature, because it gives immunity only for the offence committed at that time and place charged, whereas the question he is called to answer is as to any offence at any time within the year, and the time and place upon which the charge is to proceed is not yet ascertained.

It is true that the legislature has attempted to provide

immunity, so as to compel a witness to give evidence against himself. The privilege of the witness in the premises is a guarantee of the constitution; the constitution provides, in protection of the rights and liberty of the citizen, that no man can be compelled to give evidence against himself in a criminal prosecution. The legislature provides that he shall be compelled to give evidence against himself, and provides certain immunities as to any offence committed at that time and place.

The witness takes refuge under the sanction of the constitution and denies the power of the legislature to annul one of its provisions. Which shall prevail when in conflict, the constitution or an act of the legislature? It is true that we do not go to the constitution, nor anywhere else, to see if the legislature has power to pass any law; the legislature is supreme, except when limited and restrained in the exercise of its powers by the constitution; and if we find in the constitution any provision in conflict with the act of the legislature, we must then consider which shall be enforced; if both cannot be enforced, the court must enforce the provision enacted by the superior authority. Shall we be expected to enforce the inferior law against the superior law? The constitution is the supreme law of the land, and must be obeyed, the act of the legislature to the contrary notwithstanding. The court cannot support the inferior law as against the superior; the inferior law must give way, and the constitution be enforced.

It is the province of the witness to judge whether any evidence he may give will be against himself; and if it is against himself, he cannot be required to give it.

There is no argument which can be deduced from any consideration of public policy which can avail against the constitution. It may be ever so important to convict gamblers under the gaming act, but it is far more important to the welfare of society and the preservation of our form of

government, to preserve the constitution inviolable, and all its provisions sacred.

No argument against the supposed impolicy or want of wisdom, or utility in any of its provisions, can be considered at all; if the constitution so provides, that is the end of the argument, the legislature cannot repeal it, and it cannot alter or amend it, or modify it, it is beyond its reach, and is absolutely unaffected by its action.

It is safe to adhere to first principles. It is enough that the constitution so provides. I am of opinion to reverse the judgment of the hustings court of Richmond and discharge the accused.

RICHARDSON, J., concurred in the opinion of LACY, J.

JUDGMENT AFFIRMED.