*Ex Parte* BUSKETT.

---

DIVISION TWO.

---

Constitution: WITNESS: CRIMINATING EVIDENCE: GAMBLING. The constitutional provision that "no person shall be compelled to testify against himself in a criminal case" (Const., art. 2. sec. 23) will not excuse a witness from disclosing the names of others than himself who have been gambling, as section 3819, Revised Statutes, 1889, providing that such testimony given by one who has himself been gambling "shall in no case be used against him," affords the witness protection co-extensive with that intended to be furnished by the constitution.

Ex Parte Buskett.

*Habeas Corpus.*

WRIT DENIED.

*J. B. Harrison* and *T. J. Jones* for petitioner.

( 1 ) The relator was not bound to answer the question propounded to him by the grand jury, for the reason that the answer would inform the grand jury of the names of the other parties in any game of cards with himself, which knowledge would enable the grand jury to summon said parties before them and compel them to give evidence of relator's gambling. All of which the grand jury could not do unless the relator furnished them with sources of evidence to convict himself, and of this matter the relator is the sole judge. ( 2 ) The relator was not bound to furnish evidence that would lead to his conviction. " When the answer will have a tendency to expose the witness to a penal liablity, or to any kind of punishment, or to a criminal charge, the witness is not bound to answer." *State v. Talbott*, 73 Mo. 347 ; 1 Greenlf. Ev., sec. 451, and authorities cited ; *Henry v. Bank*, 1 N. Y. 83 ; *State v. Landsdale*, 48 Wis. 464 ; s. c., 4 N. W. Rep. 390 ; *Kuschner v. State*, 9 Wis. 140 ; *Printz v. Cheeney*, 11 Iowa, 499 ; *State v. Duffy*, 15 Iowa, 425 ; *People v. Quotte* 4 Wend. 230 ; *Southard v. Rexford*, 6 Cowan, 254; *Regina v. Garbett*, 2 Car. & Kir. N. P. 474 ; 26 N. W. Rep. 797 ; 76 Iowa, 401 ; 9 N. E. Rep. 570. ( 3 ) Section 23 of the constitution of Missouri declares " That no person shall be compelled to testify against himself in a criminal cause." ( 4 ) Section 3819, Revised Statutes 1889, is unconstitutional and void because it is special legislation.

MACFARLANE, J.—This is an application by petition of J. L. Buskett for release on writ of *habeas corpus* from the custody of John W. Cooper, sheriff of Phelps

county, and from the common jail of said county, in which he is confined.

The petition and attached record show that petitioner was summoned before the grand jury of Phelps county as a witness, and was asked if he knew the names of any parties or person who had been gambling with cards or otherwise in Phelps county within the last year. To this question he answered, yes. Petitioner was then asked who they were, other than himself. This question the witness refused to answer, giving as a reason for such refusal that the answer would criminate himself, and "would lead to the divulging of evidence that would convict" him of the misdemeanor. The fact of the refusal to answer was duly communicated to the court. The court decided that the question was proper and that petitioner should answer, informing him at the same time that his testimony should, in no case, be used against him. Still refusing to answer he was adjudged guilty of a contempt, and a fine of $25 imposed upon him. In default of payment of the fine he was ordered committed to the county jail, until the fine should be paid. From this confinement he asks to be discharged.

Petitioner insists that he was privileged to refuse to answer the question on the ground of the protection guaranteed him by section 23 of the bill of rights, which provides that "no person shall be compelled to testify against himself in a criminal cause." On the other hand the state contends that ample protection was afforded petitioner under section 3819 which is as follows: "No person shall be incapacitated or excused from testifying touching any offense committed by another, against any of the provisions relating to gaming, by reason of his having betted or played at any of the prohibited games or gaming devices, but the testimony which may be given by such person shall in no case be used against him."

Petitioner insists that this statute infringes his rights under the said section of the constitution and is, therefore, void. Waiving the inquiry in this case whether the validity of the judgment imposing the fine on petitioner could be inquired into or impeached in this collateral proceeding and whether an appeal or writ of error would lie from the judgment we will consider the real question in the case.

Petitioner claims that section 23 of the bill of rights, providing that "no person shall be compelled to testify against himself in a criminal cause," gives him the absolute right to refuse answering any question or giving any testimony which would either tend directly to prove him guilty of a crime, or would afford information or point out sources of information which might lead to fastening a crime upon himself; that section 3819 falls short of giving him that full and complete indemnity against prosecutions for crimes, about which he may be called to testify, and which may be indirectly disclosed by the evidence given, and that said section is, for that reason, in conflict with section 23 of the bill of rights, and is without force or validity.

The common-law maxim which is thus incorporated in the constitution of the state has ever been estimated and held as one of the most sacred personal rights guaranteed the citizens of this country and of England. It finds a place in every state constitution as well as in that of the United States, and should, therefore, receive such liberal construction as will secure to the citizen its full protection against inquisitorial oppression. The right thus secured would be but an empty mockery if its privileges could be impaired under a pretense of legislative regulation.

It becomes proper, then, briefly to inquire into the extent of the privilege thus accorded, in the absence of any statutory protection, and see what, if any, rights are infringed. In *People v. Hackley*, 24 N. Y. 74,

DENIO, J., in considering a like provision of the constitution of New York, says : "The history of England in early periods furnishes abundant instances of unjustifiable and cruel methods of extorting confessions, and the practice at this day in the criminal tribunals of the most polished countries in continental Europe is to subject an accused person to a course of interrogatories which would be quite revolting to a mind accustomed only to the more humane system of English and American criminal law.   It was not, therefore, unreasonable to guard, by constitutional sanctions, against repetition of such practices in this state, and it is not at all improbable that the true intention of the provisions in question corresponds with the natural construction of the language.   But there is great force in the argument that constitutional provisions, devised against governmental oppressions, and especially against such as may be exercised under pretense of judicial power, ought to be construed with the utmost liberality, and to be extended so as to accomplish the full object which the author apparently had in view, so far as it can be done consistently with any fair interpretation of the language employed.   The mandate that an accused person should not be compelled to give evidence against himself would fail to secure the whole object intended, if a prosecutor might call an accomplice or confederate in a criminal offense and afterwards use the evidence he might give to procure a conviction on the trial of an indictment against him."

The question came before this court in a very early day in *Ward v. State*, 2 Mo. 120, in which McGIRK, C. J., wrote the opinion of the court.   The facts in the case were similar to those shown by this record.   A witness before the grand jury was asked :  "Do you know of any person or persons having bet at a faro table in this county within the last twelve months ?"   To which the witness answered, "I do."   The witness was then asked to tell what person or persons have so bet other

than himself. The witness declined answering this question, saying he could not answer it without implicating himself. The question before the court was whether the witness could be required to answer. The court adopted the rule laid down by Chief Justice MARSHALL in *Burr's trial*, 245, "That it is the province of the court to judge whether any direct answer to the question that may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such case the witness must himself judge what his answer will be, and, if he say on his oath he cannot answer without accusing himself, he cannot be compelled to answer."

It is said by the supreme court of Virginia, *Kendrick v. Commonwealth*, 78 Va. 493, in speaking of a similar provision of the constitution of that state: "It ought to be construed with the utmost liberality consistent with the due execution of the laws and the safety of society. But, while it is a settled maxim of law that no man is bound to criminate himself, it is also a rule of law and a necessity of public justice, that every person is compellable to bear testimony in the administration of the laws by the duly constituted courts of the country." This court in *State v. Talbott*, 73 Mo. 357, cites approvingly the rules given by Greenleaf in his work on evidence ( vol. 1, sec. 451), " where the answer will have a tendency to expose the witness to a penal liability, or to any kind of punishment, or to a criminal charge, the witness is not bound to answer."

It will be seen by these decisions that the protection given the witness under the constitution has not been construed literally, and confined to an exemption from testifying in a criminal proceeding in which he himself is prosecuted, but has been extended to protect him in all cases in which his evidence would prove " a necessary

and essential link in a chain of testimony, which would be sufficient to convict him of crime."

The question then arises, does the statute afford the witness protection and immunity, equal to that afforded him under the constitution? If it does so, then section 3819 does not deprive petitioner of any constitutional right or privilege, and is valid. There can be no doubt that the language of the statute granting protection, that "the testimony which may be given by such person shall in no case be used against him," is as broad as the constitutional privilege, "that no person shall be compelled to testify against himself in a criminal cause." It might, therefore, be sufficient to hold as was done by BROWN, J., in *U. S. v. McCarthy*, 18 Fed. Rep. 89: "The reason of the former rule exempting witnesses from giving compulsory testimony against themselves was that their testimony might be used to convict them. The statute above quoted, in preventing all possible use of testimony thus given, does away with the reason of the rule; and there is, therefore, no longer any ground for its application." But in this case what fact could have been disclosed by petitioner in his testimony which could have been used as a link in a chain of evidence upon which he might have been convicted of a criminal offense, against the use of which, in a trial against himself, he was not given as full protection as the constitution afforded him? He was fully protected against the use of any admissions or declarations he may have made against himself. Suppose he had answered that he had seen A and B gambling with cards. What fact would have been disclosed that could have "formed a link in a chain of evidence" against himself? To look on at others gaming is not a criminal offense subjecting the observer to prosecution.

It is insisted, however, and this is the main ground of contention, that facts might be disclosed which would afford facilities for fastening the guilt upon the witness. Thus it is contended, if witness should have answered

that he had seen A and B gaming, then they could be called as witnesses to prove that petitioner was at the same time engaged in gaming. It will be seen that this illustration assumes a case outside the protection of the constitution itself as most liberally interpreted. The court in the case of *People v. Hackley, supra,* speaking on this possibility, says : " But neither the law, nor the constitution, is so sedulous to screen the guilty as the argument supposes. If a man cannot give evidence upon the trial of another person without disclosing circumstances which will make his own guilt apparent, or, at least, capable of proof, though his account of the transactions should never be used as evidence, it is the misfortune of his condition, and not any want of humanity in the law."

Referring again to the opinion of McGIRK, C. J., in case of *Ward v. State, supra,* his concluding observations meet directly the point here urged : " But in this case it is said, if the witness is bound to tell who bet at the game, without naming himself, then those persons who are named will be examined as to the fact whether he bet; and, if the witness is not compelled to name who did bet, then they will remain unknown to the grand jury, and cannot be examined whether the witness bet. I understand this doctrine to be grounded more on the fear of retaliation than on any sound principle of law. Will the law permit a man to keep offenses and offenders a secret, lest the offenders should in their turn give evidence against him ? " We think the protection of the statute coextensive with that intended to be afforded by the constitution. We are supported in this conclusion by the following cases, and others cited in 32 Cent. Law Jour. 368, construing like statutes. *State v. Quarles,* 13 Ark. 307 ; *Kneeland v. State,* 62 Ga. 397 ; *Wilkins v. Malone,* 14 Ind. 153 ; *In re Counselman,* 44 Fed. Rep. 268. Ordered that petitioner be remanded to custody. All concur.