SADIE DOYLE, Relator, v. K. E. WILLCOCKSON, Judge, Respondent.

**CRIMINAL LAW: Self-Incrimination.** Self-incriminating testi-
1  mony, given before a grand jury on appearance obtained by subpoena, even though given in a proceeding wholly against another party, and even though the witness makes no claim that he is privileged from giving such testimony, may not be used against such witness in a subsequent prosecution which involves fine and imprisonment, even though such subsequent prosecution does not strictly involve a *crime*—is simply a prosecution for contempt of court.

**WITNESSES: No Absolute Immunity after Self-Incrimination**
2  One who has been compelled to give testimony which shows or tends to show his guilt of any of the criminal or quasi criminal offenses named in Sec. 4612, Code Supp., 1913, may, nevertheless, be subsequently prosecuted for such offense, provided the conviction is made to rest on testimony *wholly distinct from*,

*and in no manner aided by*, the said testimony which he has been compelled to give.

**APPEAL AND ERROR:** Competent and Incompetent Evidence. When competent evidence conclusively shows guilt of a contempt, it will be presumed that incompetent testimony was disregarded.

**PROCESS:** Invalid Original Notice. No jurisdiction is conferred by the service of an original notice which states no more than that the cause will come on for hearing at an unnamed place, at a named but undated term of court, and that default will be taken on a certain day.

**JUDGMENT:** Validating Dead Judgment. A judgment or decree which is dead because entered on default, and on a notice which, as a matter of law, conferred no jurisdiction, may not be imbued with life by the subsequent filing of an answer which (a) admits the allegations of the petition, (b) declares the said notice legal, (c) waives any and all defects in said notice, and (d) consents to said judgment or decree, and that it shall be binding and of full force and effect.

**STIPULATIONS:** Non-Allowable Stipulations. Stipulations as to what the law is are unallowable.

**PLEADING:** Effect of Answer after Entry of Void Judgment. Whether the filing of a curative answer (as to jurisdictional matters) after the entry of an absolutely void default judgment works an estoppel to dispute the enforcibility of said judgment, or whether such filing may be treated as an appearance which will authorize the entry of a new and valid judgment, *quaere*.

*Certiorari to Mahaska District Court.*— K. E. Willcockson, Judge.

October 25, 1918.

We have two questions: Does the fact that the relator gave testimony before the grand jury of Mahaska County, tending to prove that she had violated the laws against the unlawful sale or keeping of liquors since she was enjoined' from thus selling or keeping, give her immunity against being punished for violating said injunction? Was the court without jurisdiction because the injunction was granted on

a service of notice which is, in law, no service? The respondent adjudged relator guilty of contempt of court in violating the alleged injunction, and this proceeding is the result.—*Annulled.*

*John N. McCoy,* for relator.

*Burrell & Devitt,* for respondent.

SALINGER, J.—I.   Though there are disputes as to what was testified to before the grand jury, there is no conflict on what is essential on this review.   Relator went before the grand jury in response to a subpoena, and, in answer to questions propounded to her, gave testimony which tends to prove she violated an alleged injunction restraining her from unlawfully keeping or selling liquor.   Subsequently, she was charged with being in contempt for violating said injunction, and respondent adjudged her to be guilty.   She pleaded, in abatement and in bar, that such prosecution is violative of the provision in the Constitution of Iowa that no one shall be deprived of liberty or property without due process of law, and violative of Section 4612 of the Code. Statute provisions substantially like Section 4612 have been held to be the equivalent of constitutional guarantees that liberty and property shall not be taken without due process of law, and that no one shall be compelled by his own testimony to aid in his being convicted of crime.   See *Bedgood v. State,* 115 Ind. 275 (17 N. E. 621, at 623) ; *Ex Parte Buskett,* 106 Mo. 602 (17 S. W. 753) ; *State v. Quarles,* 13 Ark. 307 ; *Higdon v. Heard,* 14 Ga. 255 ; *Ex Parte Rowe,* 7 Cal. 184 ; *La Fontaine v. Southern Underwriters Assn.,* 83 N. C. 132.   Since, then, the relator invokes this statute, she inferentially concedes its validity ; and her plea that certain constitutional provisions have been violated is, on analysis, a claim that said statute, which is a mere amplification of

1. CRIMINAL LAW : self-incrimination.

such constitutional provisions, has been disregarded. The question is whether this contention is sustained.

### 1a

Before going further, it will be well to dispose of incidental questions. Said statute enacts that evidence obtained under its provisions shall not be used in prosecution for described crimes. Respondent says that the statute does not apply, because the evidence given by relator was, if used at all, used in support of an information charging contempt of court, and that trial of such a charge is not a prosecution for crime, because we held, in *Judge v. Powers,* 156 Iowa 251, that being adjudged guilty of contempt of court is not a conviction of crime. Relator answers that the *Powers* decision should be overruled; that the great weight of authority is that one may not rightfully be compelled to give testimony against himself in proceedings in which fine and imprisonment may be imposed, though the proceeding be not, in strictness, a prosecution for crime; and that contempt proceedings are of that class. We think the law upholds the relator in this contention. See *Robson v. Doyle,* 191 Ill. 566 (61 N. E. 435) ; *Boyd v. United States,* 116 U. S. 616 (6 Sup. Ct. Rep. 524) ; *People v. Butler St. F. & I. Co.,* 201 Ill. 236 (66 N. E. 349) ; *Counselman v. Hitchcock,* 142 U. S. 547 (12 Sup. Ct. Rep. 195). We have, therefore, no occasion to consider whether *Judge v. Powers* should or should not be overruled.

### 1b

The respondent presents that, because a grand jury cannot compel answers, and, on refusal to answer, the court must be resorted to to compel answer or punish for refusal to answer, any testimony given before the grand jury is not within the prohibition, because not given under compulsion; further, that relator may not complain, because she claimed

no privilege. We are of opinion that, where appearance before the grand jury is on subpoena, and answers are made in response to questions by the county attorney or members of the jury, that such answers are compelled testimony, in the view of immunity provisions. See *Counselman v. Hitchcock,* 142 U. S. 547 (12 Sup. Ct. Rep. 195). We think that such compelled testimony may base immunity, though no privilege is claimed before the grand jury. The mere suggestion of what might be done before a body of whose action the witness has no advance notice, and before whom he may not have counsel, suffices to support this holding.

### 1c

Respondent argues that the prohibition runs only against testimony given in some proceeding against or investigation dealing with the witness whose testimony therein is proposed to be used. It seems that the investigation in the course of which relator was interrogated was not one directed against herself, but was one instituted concerning one Brown. We are of opinion that this is immaterial; and that, if the testimony be otherwise of a character that its use is prohibited by the statute, it does not matter that it was elicited in a proceeding against or investigation of someone other than the witness. See *Counselman v. Hitchcock,* 142 U. S. 547 (12 Sup. Ct. Rep. 195).

### 1d

This disposes, as well, of one contention made by the relator: that she was, and should not have been, prosecuted for a crime connected with or growing out of an act upon which the proceeding in which she was compelled to testify was based. Whatever be the status of the proceeding for contempt of court instituted against the relator, she was not prosecuted for such an act. Assume here that her

testimony before the grand jury was used in the proceeding for contempt of court, still the crime to which the investigation in which she testified was directed was the conduct of Brown. It follows that relator was not prosecuted for the act, or anything in connection therewith, which was being investigated in the proceeding in which she gave her testimony.

II. We have already pointed out that the essence of relator's complaint is that Section 4612 of the Code was violated, and we have disposed of one provision of that statute. There remains for consideration

2. WITNESSES: no absolute immunity after self-incrimination.

another of its provisions, which is, as we construe it, that testimony such as relator gave shall not be used against her. That provision does not create an absolute immunity because one has been compelled to give testimony that might base or help obtain his conviction of a crime. If such testimony is never used, directly or indirectly, to obtain a conviction, and neither it nor any link in it suggests or obtains the testimony that is used, the statute has not been breached. In the true sense, this part of the statute is not an immunity statute at all. It is a handicap upon prosecution. The fact that testimony has been improperly compelled is of no consequence, if conviction is obtained without any help from such testimony. Though the evidence given before the grand jury was such as that, if produced in court, it would require a finding of guilt, that is immaterial if the tribunal that adjudges guilt never heard of this testimony, and founds its judgment upon other testimony, in no wise suggested by that taken before the grand jury, and where such independent evidence is sufficient to sustain the judgment. An amplification of the doctrine of error without prejudice is involved. Let it be never so much condemned by law to obtain certain testimony, that wrong should not set aside a judgment upon abundant evidence wholly distinct from

and unaided by the testimony wrongfully obtained. An application of this principle disposes of this branch of the case. The answer complains that the testimony obtained from relator was connected with the charge upon which she was found guilty; that she was compelled "to disclose the circumstances of her offense, as shown by her evidence;" that she was compelled to testify that she got a barrel of beer every week from Albert Lea, and ordered her whiskey from Warsaw, Illinois; that the grand jury asked her how much she got for her beer a bottle, and that she told them she got 35 cents; and that she was compelled to give "other evidence" which tended to incriminate herself. On examination, we find that this "other evidence" is this: The matter under investigation was whether one Brown had violated the liquor laws. Relator was interrogated on whether she had bought liquor of Brown during stated times, and denied having done so. She stated that she had ordering slips, and that she sent them to the Schmidt Brewing Company at Albert Lea, when ordering "her stuff," and that one Joe Smith collected for this company about once a month; also, that she got a barrel of beer every two weeks, and when she needed extra, she sent for it. To put it at its strongest for the relator, she stated, in response to questions by the county attorney, that she had a standing order for a barrel of beer a week, and what draymen did her hauling. And she stated that what whiskey she ordered was at Warsaw, Illinois; that, since she quit selling beer, she quit ordering from Warsaw, because she didn't like Warsaw beer for personal use; and she now ordered it from Albert Lea.

The only way this evidence got into the prosecution for contempt was on the issue tendered by the relator on whether testimony bearing on the prosecution for contempt had been obtained from her, and, if so, whether it had been obtained by compulsion. None of it was tendered as substantive evidence in support of the information. The sub-

stantive testimony was, with one exception to be noted, utterly distinct from anything that was gone into before the grand jury. One Hurley testified to being at the house of relator since the issuance of the injunction; that he bought some whiskey, paying $1.75 a quart, and 10 cents for a drink. Ryan testified that, within the material times, he delivered beer brought by the railroad from Albert Lea to the relator. As for the rest, the record of the railroad, put in, showed the receipt of liquors; and it is admitted that, at the material times, relator had a government license for retailing liquor. With the one exception, to be noted, nothing that occurred before the grand jury helped in any way to get this evidence, and has no relation to it; and it is undisputed, and manifestly abundant to sustain the finding of guilt.

But relator did tell the grand jury that she got beer from Albert Lea, and the names of draymen who did her hauling; and one drayman, Ryan, testified against her that he delivered to her beer that had been shipped from Albert Lea; and the records of the railroad, showing shipments of beer to her from Albert Lea, were put in. It must be admitted her testimony before the grand jury pointed out other evidence existed of her having beer shipped to her from Albert Lea, and of its being delivered to her by draymen named by her. The record does not show that she named Ryan; but even if she did not, it cannot be denied that a statement that draymen did deliver to her might suggest looking up Ryan, even though he was not named by her; and that a statement that beer was shipped to her from Albert Lea might suggest that records of the shipping railroad could prove that fact. And if it were not for another application of the rule of harmless error, we could not avoid the conclusion that some of the testimony given before the grand jury was an aid to proving relator guilty of contempt of court. But when we apply that rule, we are com-

pelled to find that relator was not prejudiced. Hurley was
not mentioned before the grand jury, nor selling whiskey
to anyone. Now, when relator left undisputed the point-
blank testimony of Hurley that he bought whiskey of her,
and what he paid her for it, and when the government
license was put in evidence, the trial court could not have
been affected by the introduction of the railroad records
showing shipments of beer from Albert Lea, and testimony
of Ryan that he delivered shipped beer to relator. As well
say that, if 'she had, in open court, admitted her guilt, she
might now complain that thereafter, testimony tending to
show guilt was put in, the adducing of which was suggested
by her testimony before the grand jury. And in this con-
nection, we have to say that we do not overlook *Sandwich v.
State*, 137 Ala. 85 (34 So. 620). We do not find it to be at
all controlling. In effect, it holds that, though a witness
testifies to the commission of an act under investigation by
a grand jury, before another is compelled to testify concern-
ing the same act, the fact that this earlier testimony was
given will not bar the other from claiming immunity from
prosecution on an indictment against him founded upon the
testimony of both. This is but an announcement of the
elementary principle that, when it does not appear upon
which of several things a judicial act is based, it must be
assumed that it may be based on any or all
of them. The differentiation is that here we
are governed by an application of the rule
that, when competent evidence conclusively
shows guilt, it will be presumed that incompetent testi-
mony was disregarded.

3. APPEAL AND
ERROR: compe-
tent and in-
competent evi-
dence.

In one word, the judgment at bar cannot be disturbed
because of what occurred before the grand jury, unless the
statute may be construed to be that, if one be examined be-
fore a grand jury, and evidence be elicited tending to show
that he has violated an injunction against the illegal sale

of liquor, this fact alone, though his being found guilty of contempt of court in no wise rests upon such testimony, or anything suggested by it, absolves from punishment for any violation of such an injunction, if the violation antedates such inquiry before the grand jury. This is not its true interpretation. We hold that the statute was not violated, because it is conclusively shown that the judgment has for no part of its basis any testimony given before the grand jury, or suggested by such testimony.

III. The decree of injunction that relator was charged with violating was on default, and upon service of a notice which failed to state when the cause would come on for hearing, beyond saying that it would be at 4. PROCESS: invalid original notice. the December term of the court, in 1913, and did not go beyond advising that, unless appearance and defense were made before noon of the 21st of December, 1913, default would be entered, etc. It did not advise when the term would begin, nor where the hearing was to be had. Under cases like *Jones & Magee Lbr. Co. v. Boggs*, 63 Iowa 589, *Cummings v. Landes*, 140 Iowa 80, *Genther v. Fuller*, 36 Iowa 604, *Phinney v. Donahue*, 67 Iowa 192, *Rea v. Rea*, 123 Iowa 241, *Beck v. Vaughn*, 134 Iowa 331, *Kitsmiller v. Kitchen*, 24 Iowa 163, and *Haws v. Clark*, 37 Iowa 355, the service of this notice conferred no jurisdiction; and relator has the right to 5. JUDGMENT: validating dead judgment. urge this as a bar to being punished for violating the alleged injunction. That this is so, respondent seeks to avoid, rather than to deny. The avoidance is by something that occurred after said decree had been entered. That was in December, 1913, and by presumption, the 15th of that month. On the 15th of December, 1915, defendant filed an answer, in which she declares that the original notice served on her was legal, and that she waives any and all defects therein; she admits the allegations of the petition; she consents to the said decree,

and that it shall be binding, and of full force and effect. Now, her admissions or declarations that the notice served on her was legal, and that the decree entered is legal, binding, and of full force and effect, are no stronger than if the parties had stipulated that this was true. And we have held frequently that parties may not bind this court by stipulating what the law is. *Tuttle v. Pockert,* 147 Iowa 41, 43; *Ford v. Dilley,* 174 Iowa 243, at 250. As to the waiver of defects in the original notice, such waiver, if made before the entry of judgment, would, of course, conclude the relator. For that matter, the mere filing of an answer before entry of decree would make it immaterial that no notice whatever had been served. But the question remains whether a waiver of defects in notice, or an appearance which waives all notice, after final entry of decree, can have any effect in validating a decree entered upon default, and upon a notice which is, in law, no notice. We are constrained to hold that a judgment which is void for want of notice can no more be validated after entry of judgment by any waiver of notice than it could be by serving a proper notice after judgment. Suppose the answer filed after entry of decree had been a denial of guilt. Surely, a valid decree on default would not be nullified by such answer. Even as the plaintiff's rights could not be affected by such an answer, we think his decree can gain nothing by the answer which was filed. If denial of guilt would not avoid the decree, confession of guilt cannot validate it. After entry and after two years, the case was dead. There was no longer jurisdiction of the subject-matter. We held, in *State v. Chariton Telephone Co.,* 173 Iowa 497, that an acceptance of a void ordinance by a telephone company did not estop it from claiming under a valid legislative grant by the state; that what is wholly void and without legal effect cannot be made the basis of an estoppel.

6. STIPULATIONS:
   non-allowable
   stipulations.

Whatever effect a confession after the entry of a void decree may have upon what may be done against the one confessing, a void judgment cannot be validated by a confessing, after entry, that the void judgment

7. PLEADING: effect of answer after entry of void judgment.

is binding, legal, and effective. Possibly, such confession might base an estoppel. See *Commonwealth v. Bell,* 145 Pa. 374 (22 Atl. 641). Possibly, a plea of estoppel would be supported by showing that, after this confession, and in reliance thereon, the plaintiff went to the trouble and expense of beginning a proceeding charging the violation of the injunction. But that question is not here, because no response in pleading was made to the allegation of the petition setting up that the decree was void; and no estoppel is pleaded. We do not mean to hold that such a confession of record as this relator made is of no effect whatever. While, of course, we are not determining the point, it is not amiss to suggest that possibly the filing of this answer might operate as an original appearance, and a consent to be enjoined. If it be that, no doubt it could be the basis for an information charging contempt by violating such an injunction. One difficulty is that the information does not rest upon an injunction entered on voluntary appearance on December 14, 1915, but upon an express declaration that the violation was of an injunction on default, entered in December, 1913. At its best for the respondent, on the theory just suggested, there would be a fatal variance in the proof. But what is even more controlling is that, if it be assumed that an injunctional order, issued upon the filing of this answer, might base a charge of contempt of court, yet no such order was entered. Our holding that the permanent injunction is void, of course, leaves the temporary injunction in full effect. But there is but one injunction in this record that could be violated. The complaint charges nothing but the violation of that particular injunction. It is void. Conse-

quently, there was no jurisdiction to punish for violating the same. Wherefore, we are constrained to hold that the order and judgment below must be annulled. See *Beck v. Vaughn*, 134 Iowa 331; *Laughton v. Nadeau*, 75 Fed. 789; *McConnell v. Vinet*, 2 McGloins (La.) 36; *In re Christiansen*, 17 Utah 412 (53 Pac. 1003) ; *Zimmerman v. Gerdes*, 106 Wis. 608 (82 N. W. 532). See 30 Century Digest, Judgments, 40, 41.—*Annulled.*

PRESTON, C. J., LADD, EVANS, GAYNOR, and STEVENS, JJ., concur.