THE PEOPLE *ex rel.* E. C. Akin

*v.*

THE BUTLER STREET FOUNDRY. AND IRON COMPANY.

*Opinion filed February 18, 1903.*

1. CONSTITUTIONAL LAW—*what necessary to sustain act requiring a party to give incriminating evidence.* In order to sustain an act requiring a party to give evidence which might tend to incriminate him, the immunity offered must be broad enough to protect him against future punishment for the offense which the evidence discloses.

2. SAME—*when privilege against giving incriminating evidence cannot be claimed.* The constitutional privilege that no person shall be compelled in a criminal case to give evidence tending to incriminate himself cannot be claimed, if, by reason of an immunity statute, the evidence cannot be used as a basis in aid of a prosecution which might result in fine, imprisonment, penalty or forfeiture.

3. SAME—*when courts will exclude matters upon which legislature has no power to act.* Matters upon which the legislature has no power to pass will be excluded by the courts in passing upon the validity of a statute, although comprehended within the general terms of the act, unless the different parts of the act are so connected that they cannot be separated without destroying the evident intention of the legislature.

4. SAME—*Anti-trust act of 1891 has no extra-territorial force.* While the terms of the Anti-trust act of 1891 (Laws of 1891, p. 206,) may be broad enough to include trusts, pools and combines formed with parties outside the State of Illinois, yet in construing the act the courts must consider the act as relating only to trusts, pools, combines, etc., formed within this State.

5. SAME—*section 7a of Anti-trust act construed.* The affidavit required by section 7a of the Anti-trust act of 1891, as amended in 1893, (Laws of 1893, p. 89,) need only state whether or not the corporation has violated the statute by performing some of the prohibited acts within the State of Illinois, and need not include acts connecting it with any trust, pool or combine formed outside of this State, which would constitute a violation of the Anti-trust act of the United States.

6. SAME—*immunity against criminal prosecution based on facts shown by affidavit is complete.* The immunity against criminal prosecution, contained in section 7b of the Anti-trust act of 1891 as amended, (Laws of 1893, p. 91,) is complete as against prosecution by the Federal authorities or authorities of other States, since the affidavit required by section 7a, to which such immunity is extended, need relate only to trusts, pools, combines, etc., within the State of Illinois.

7. SAME—*imaginary danger not within constitutional privilege.* The possibility that the affidavit required by section 7*a* of the Anti-trust act of 1891 might contain disclosures tending to show a violation of the anti-trust law of some other State or of the United States, is not a real and probable danger of criminal prosecution within the constitutional privilege against giving self-incriminating evidence.

8. SAME—*words "truthfully disclosed," used in section 7b, not a condition of immunity.* The words "truthfully disclosed," used in section 7*b* of the Anti-trust act of 1901, providing that no corporation or individual shall be subject to any criminal prosecution by reason of anything truthfully disclosed in the affidavit, do not amount to a condition upon which, only, immunity shall be granted.

9. SAME—*scope of words "criminal cases," used in constitution.* The words "criminal cases," as used in the State and Federal constitutions, include both civil and criminal proceedings which might result in imprisonment, fine, forfeiture or penalty; and if an immunity statute is couched in the same language as the constitution it will receive the same construction, and will be held to grant immunity from imprisonment, fine, forfeiture or penalty.

10. SAME—*singling out of corporations to make affidavit is not an arbitrary discrimination.* The placing of corporations in a class by themselves and requiring them to file the anti-trust affidavit required by section 7*a* of the Anti-trust act of 1891, leaving individuals and partnerships simply liable to the penalties provided for violating section 1 of the act, is not an illegal or arbitrary classification, which invalidates said section.

11. SAME—*section 7a of Anti-trust act not an exercise of judicial power.* Section 7*a* of the Anti-trust act of 1891, requiring corporations to file the anti-trust affidavit, and providing that a failure in that regard shall subject the offender to a penalty by the courts, is not invalid as an attempt by the legislature to exercise judicial power.

12. SAME—*amendment of 1893 not invalid for exempting loan associations.* The amendment of 1893 to the Anti-trust act, providing for the making of an anti-trust affidavit by corporations, is not invalid by reason of its excluding building, loan and homestead associations from the provisions of the act.

13. SAME—*Anti-trust act of 1891 not repealed by the act of 1893.* The Anti-trust act of 1891 was not repealed, expressly or by implication, by the Anti-trust act of 1893; (Laws of 1893, p. 182;) nor is the validity of the act of 1891 affected by the fact that the entire act of 1893 was declared void, as violating the Federal constitution.

14. SAME—*amendment of 1897 to Anti-trust act is unconstitutional.* The amendment of 1897 to section 1 of the Anti-trust act of 1891, (Laws of 1897, p. 298,) providing that in mining, manufacture or production of articles of merchandise the cost of which is mainly

made up of wages, it shall not be unlawful to enter into joint arrangements of any sort the principal effect of which is to maintain or increase wages, is unconstitutional, but, being a distinct act from that of 1891 and not expressly repealing said section 1, its unconstitutionality does not affect the act of 1891.

15. SAME—*amendment does not necessarily repeal the section amended.* The constitutional method of passing amendments to statutes in this State which requires the section to be amended to be inserted at length in the new act, does not necessitate holding that the effect of the amendment is to repeal the section as it stood before amendment, notwithstanding the amendment is unconstitutional.

16. SAME—*Anti-trust act of 1891 and the amendment of 1893 are constitutional.* The Anti-trust act of 1891, (Laws of 1891, p. 206,) and the amendment of 1893 (Laws of 1893, p. 89,) adding sections 7*a* and 7*b*, are constitutional and valid.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This is an action of debt, brought by the People of the State of Illinois, at the relation of the Attorney General, against the Butler Street Foundry and Iron Company, a corporation organized under the laws of this State, with its place of business in Cook county, to recover a penalty of $50 per day for a failure on its part to comply with the provisions of sections 7*a* and 7*b* of "An act to provide for the punishment of persons, co-partnerships or corporations forming pools, trusts and combines, and mode of procedure and rules of evidence in such cases," approved June 11, 1891, as amended June 20, 1893, and June 10, 1897, by making answer through its president, secretary, treasurer or one of its directors, under oath, to the letter of inquiry of the Secretary of State as to whether it had become a member of any trust, pool, combine, etc. A general demurrer to the declaration having been overruled, the plea of *nil debet* was filed, and a jury having been waived a trial was had before the court, which resulted in a finding and judgment in favor of the defendant, and the case has been brought by the plaintiff, by appeal, direct to this court, on the ground that the constitutionality of the statute upon

which said action is based is involved, which question is properly preserved by the holdings of the court upon propositions of law given and refused.

It was stipulated upon the trial that the evidence showed a violation of the statute if the court should hold the statute constitutional, and if a judgment should be rendered against the defendant it should be for the sum of $50 and costs. It was further stipulated that the court should consider a witness upon behalf of the defendant as having testified that the defendant was not a member of any trust, pool or combine in violation of sections 1 and 2 of the act of 1891, and that the defendant had not violated either of said sections 1 and 2, provided the court should hold such testimony to be material.

The statute upon which the action is based is as follows, (the amendment of June 20, 1893, being sections 7*a* and 7*b*, and that of June 10, 1897, in italics):

"Sec. 1. If any corporation organized under the laws of this or any other State or country, for transacting or conducting any kind of business in this State, or any partnership or individual or other association of persons whosoever, shall create, enter into, become a member of or a party to any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual or any other person or association of persons, *to regulate or fix the price of any article of merchandise or commodity*, or shall enter into, become a member of or party to any pool, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this State, such corporation, partnership, or individual or other association of persons shall be deemed and adjudged guilty of a conspiracy to defraud, and be subject to indictment and punishment, as provided in this act: *Provided, however, that in the mining, manufacture or production of articles of merchandise, the cost of which is mainly*

*made up of wages, it shall not be unlawful for persons, firms or corporations doing business in this State to enter into joint arrangements of any sort, the principal object or effect of which is to maintain or increase wages.*

"Sec: 2. It shall not be lawful for any corporation to issue or to own trust certificates, or for any corporation, agent, officer or employees, or the directors or stockholders of any corporation, to enter into any combination, contract or agreement with any person or persons, corporation or corporations, or with any stockholder or director thereof, the purpose and effect of which combination, contract or agreement shall be to place the management or control of such combination or combinations, or the manufactured product thereof, in the hands of any trustee or trustees, with the intent to limit or fix the price, or lessen the production and sale of any article of commerce, use or consumption, or to prevent, restrict or diminish the manufacture or output of any such article.

"Sec. 3. If a corporation or a company, firm or association shall be found guilty of a violation of this act, it shall be punished by a fine in any sum not less than five hundred dollars ($500), nor more than two thousand dollars ($2000), for the first offense; and for the second offense not less than two thousand dollars ($2000), nor more than five thousand dollars ($5000); and for the third offense not less than five thousand dollars ($5000), nor more than ten thousand dollars ($10,000); and for every subsequent offense and conviction thereof, shall be liable to a fine of fifteen thousand dollars ($15,000): *Provided,* that in all cases under this act either party shall have the right of trial by jury.

"Sec. 4. Any president, manager, director or other officer or agent or receiver of any corporation, company, firm or association, or any member of any company, firm or association, or any individual, found guilty of a violation of the first section of this act, may be punished by a fine of not less than two hundred dollars ($200), nor to

exceed one thousand dollars ($1000), or be punished by confinement in the county jail not to exceed one year, or both, in the discretion of the court before which such conviction may be had.

"Sec. 5. Any contract or agreement in violation of any provision of the preceding sections of this act shall be absolutely void.

"Sec. 6. Any purchaser of any article or commodity from any individual, company or corporation transacting business contrary to any provision of the preceding sections of this act shall not be liable for the price or payment of such article or commodity, and may plead this act as a defense to any suit for such price or payment.

"Sec. 7. The fines hereinbefore provided for may be recovered in an action of debt, in the name of the People of the State of Illinois. If, upon the trial of any cause instituted under this act to recover the penalties as provided for in section 3, the jury shall find for the People, and that the defendant has been before convicted of a violation of the provisions of this act, they shall return such finding with their verdict, stating the number of times they find defendant so convicted, and shall assess and return with their verdict the amount of the fine to be imposed upon the defendant in accordance with said section 3: *Provided,* that in all cases under the provisions of this act, a preponderance of evidence in favor of the People shall be sufficient to authorize a verdict and judgment for the People.

"Sec. 7*a.* It shall be the duty of the Secretary of State, on or about the first day of September of each year, to address to the president, secretary or treasurer of each incorporated company doing business in this State whose post-office address is known or may be ascertained a letter of inquiry as to whether the said corporation has all or any part of its business or interest in or with any trust, combination or association of persons or stockholders, as named in the preceding provisions

201—16

of this act, and to require an answer, under oath, of the president, secretary or treasurer, or any director of said company; a form of affidavit shall be enclosed in said letter of inquiry, as follows:

AFFIDAVIT.

STATE OF ILLINOIS, } *ss.*
*County of.............* }

"I, ............ do solemnly swear that I am the ........ (president, secretary, treasurer or director) of the corporation known and styled............duly incorporated under the laws of........ on the....day of........18.., and now transacting or conducting business in the State of Illinois, and that I am duly authorized to represent said corporation in the making of this affidavit; and I do further solemnly swear that the said...............known and styled as aforesaid, has not, since the....day of.........(naming the day upon which this act takes effect) created, entered into or become a member of or a party to, and was not, on the....day of ........nor at any day since that date, and is not now, a member of or a party to any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual or any other person or association of persons, to regulate or fix the price of any article of merchandise or commodity; and that it has not entered into or become a member of or a party to any pool, trust, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this State; and that it has not issued and does not own any trust certificates, and for any corporation, agent, officer or employee or for the directors or stockholders of any corporation, has not entered into and is not now in any combination, contract or agreement with any person or persons, corporation or corporations, or with any stockholder or director thereof, the purpose and effect of which said combination, contract or agreement would be to place the management or control of such combination or combinations, or the manufactured product thereof, in the hands of any trustee or trustees with the intent to limit or fix the price or lessen the production and sales of any article of commerce, use or consumption, or to prevent, restrict or diminish the manufacture or output of any such article.

........................................  .....
(President, secretary, treasurer or director.)

"Subscribed and sworn to before me, a..............within and for the county of........this....day of........18...

(Seal.)    ..................................

"And on refusal to make oath in answer to said inquiry, or on failure to do so within thirty days from the

mailing thereof, the Secretary of State shall certify that fact to the Attorney General whose duty it shall be to direct the State's attorney of the county wherein such corporation or corporations are located, and it is hereby made the duty of the State's attorney, under the direction of the Attorney General, at the earliest practicable moment, in the name of the People of the State of Illinois, and at the relation of the Attorney General, to proceed against such corporation for the recovery of a penalty of $50 for each day after such refusal to make oath, or failure to make said oath within the thirty days from the mailing of said notice. Or the Attorney General may, by any proper proceedings in a court of law or chancery proceed upon such failure or refusal to forfeit such charter of such incorporated company or association incorporated under the general laws or by any special law of this State, and to revoke the rights of any foreign corporation located herein to do business in this State.

"Sec. 7b. It shall be the duty of the Secretary of State, at any time, upon satisfactory evidence that any company or association of persons, duly incorporated under the laws of this or any other State, doing business in this State, has entered into any trust, combination or association in violation of the preceding sections of this act, to demand that it shall make the affidavit, as above set forth in this act, as to the conduct of its business. In case of failure of compliance on the part of the corporation, then the same procedure shall ensue as is provided in section 7a of this act: *Provided*, that no corporation, firm, association or individual shall be subject to any criminal prosecution by reason of anything truthfully disclosed by the affidavit required by this act, or truthfully disclosed in any testimony elicited in the execution thereof. The Secretary of State is hereby authorized and required to charge and collect of each corporation, a fee of one dollar for receiving and filing the affidavit herein provided for, to be accounted for as other fees received

by him.    To enable the Secretary of State to discharge the additional duties devolving upon him in the execution of this act there is hereby appropriated out of any funds in the State treasury not otherwise appropriated, or so much thereof as may be necessary, the sum of $6000 per annum, payable to the Secretary of State on his order upon proper vouchers as required by law: *Provided*, that corporations organized under the building, loan and homestead association laws of this State are excluded from the provisions of this act.

"Sec. 8. It shall be the duty of the prosecuting attorneys in their respective jurisdictions, and the Attorney General, to enforce the foregoing provisions of this act, and any prosecuting attorney of any county, securing a conviction under the provisions of this act, shall be entitled to such fee or salary as by law he is allowed for such prosecution.    When there is a conviction under this act the informer shall be entitled to one-fifth of the fine recovered, which shall be paid him when the same is collected.    All fines recovered under the provisions of this act shall be paid into the county treasury of the county in which the suit is tried, by the person collecting the same, in the manner now provided by law to be used for county purposes."    (Hurd's Stat. 1899, pp. 615-618.)

H. J. HAMLIN, Attorney General, CHARLES S. DENEEN, State's Attorney, (EDWARD S. ELLIOTT, and GEORGE B. GILLESPIE, of counsel,) for appellant:

Where a statute is in part in conflict with the constitution, it will only so far be held invalid as it conflicts, if other provisions of the act may be enforced independently of those conflicting with the constitution. *Edwards* v. *Pope*, 3 Scam. 465; *Knox County* v. *Davis*, 63 Ill. 405.

If the remaining provisions of a statute, separated from those in conflict with the constitution, may be enforced without regard to the provisions so in conflict, such remaining provisions will be held valid and may be

enforced.   *Myers* v. *People,* 67 Ill. 503; *Quincy* v. *Bull,* 106 id. 337; *People* v. *Hazelwood,* 116 id. 319; *Reed* v. *Wharton,* 119 id. 118; *Donnersberger* v. *Prendergast,* 128 id. 229.

The amendatory act of 1893 to the Anti-trust act of 1891 does not violate the Federal or State constitutional provision that no person shall be compelled to give evidence which may tend to incriminate him.

The objection is removed because the statute in express terms grants absolute immunity to the corporation and its officers, both from civil and criminal prosecution, by reason of anything disclosed in the affidavit required. *Boyd* v. *United States,* 116 U. S. 634; *Coffee* v. *United States,* id. 436; *Counselman* v. *Hitchcock,* 142 id. 547; *Alexander* v. *Knox,* 7 Ala. 503; *Brown* v. *Walker,* 161 U. S. 597; *Lonney* v. *Perham,* 20 Me. 235; *Baird* v. *Cochran,* 4 S. & R. 397; *Hays* v. *Richardson,* 1 Gill & J. 366; *Ward* v. *Sharp,* 15 Vt. 115.

Whether the action be in form civil or criminal, if it is brought to subject the corporation to fines, penalties or forfeitures, the constitutional provisions apply in the absence of an immunity clause, and the language of the immunity here being as broad as the provisions of the constitution must have the same construction.   And the same rule applies as to individuals or partnerships. *Coffee* v. *United States,* 116 U. S. 436; *Counselman* v. *Hitchcock,* 142 id. 547; *Brown* v. *Walker,* 161 id. 591.

A provision of the statute which requires a witness to testify to facts which may incriminate him or subject him to penalties or forfeitures, but grants to him complete immunity from prosecution for any offense disclosed by such testimony, is a valid provision and takes away the constitutional privilege. *Counselman* v. *Hitchcock,* 142 U. S. 547; *Brown* v. *Walker,* 161 id. 591; *Bradley* v. *Clark,* 133 Cal. 196; *Samler* v. *Meyers,* 20 Pa. Dis. 147.

MORAN, MAYER & MEYER, for appellee:

The amendatory act of 1893 (sections 7*a* and 7*b*) violates the right of the people to be secure against unrea-

sonable searches and seizures, and the principle that no person shall be required in a criminal case to give evidence against himself. It denies to the defendant due process of law. *Currier* v. *Concord Railroad Corp.* 48 N. H. 321; *State* v. *Hardware Co.* 109 Mo. 118.

The immunity does not cover prosecutions under the Federal law nor under the laws of other States. *People* v. *Nussbaum*, 67 N. Y. Supp. 492; *Davies* v. *Bank*, 4 id. 373; *Logan* v. *Railroad Co.* 132 Pa. St. 403; *Osborn* v. *Bank*, 154 id. 134; *Brown* v. *Walker*, 161 U. S. 591; *Lamson* v. *Boyden*, 160 Ill. 613; *Railway Co.* v. *Ellis*, 165 U. S. 150; *Counselman* v. *Hitchcock*, 142 id. 588; *Steel Co.* v. *United States*, 175 id. 211.

The immunity cannot be conditioned upon the truthfulness of the disclosure. *Lamson* v. *Boyden*, 160 Ill. 613; *Counselman* v. *Hitchcock*, 142 U. S. 547.

The immunity is not co-extensive with the constitutional privilege. 1 Greenleaf on Evidence, (16th ed.) sec. 469, p. 611; 6 Ency. of Pl. & Pr. 742, 744, 793; 29 Am. & Eng. Ency. of Law, 836; *Boyd* v. *United States*, 116 U. S. 616; *Skinner* v. *Judson*, 8 Conn. 527; *Livingston* v. *Harris*, 3 Paige's Ch. 527; Story's Eq. Pl. sec. 576; *United States* v. *Saline Bank*, 1 Pet. 100; *Johnson* v. *Donaldson*, 3 Fed. Rep. 22; *Snow* v. *Mast*, 63 id. 623; *Atwill* v. *Ferrett*, 2 Blatch. 39; *Finch* v. *Rikeman*, id. 301; *Davies* v. *Bank*, 4 N. Y. Supp. 373; *People* v. *Insurance Co.* 40 Ill. App. 428; *Logan* v. *Railroad Co.* 132 Pa. St. 403; *Osborn* v. *Bank*, 154 id. 134; *Brown* v. *Walker*, 161 U. S. 591.

The original act of June 20, 1893, repealed the act of June 11, 1891. *Devine* v. *Cook County*, 84 Ill. 590; *Mullen* v. *People*, 31 id. 444; *People* v. *Nelson*, 156 id. 364; *United States* v. *Tynen*, 11 Wall. 88; *Nichols* v. *Squire*, 5 Pick. 168; *State* v. *Whitworth*, 8 Port. 434; *Dowdell* v. *State*, 58 Ind. 333; *Commonwealth* v. *Kimball*, 21 Pick. 373; *United States* v. *Claflin*, 97 U. S. 546; *Leighton* v. *Walker*, 9 N. H. 59.

The amendatory act of 1893 is unconstitutional because it singles out corporations. *Railroad Co.* v. *Bloomington*, 76 Ill. 447; *Ruggles* v. *People*, 91 id. 256; *Railway Co.*

v. *Ellis,* 165 U. S. 150; *Santa Clara County* v. *Railroad Co.* 118 id. 394; *Mining Co.* v. *Pennsylvania,* 125 id. 181; *Railway Co.* v. *Mackey,* 127 id. 205; *Railway Co.* v. *Beckwith,* 129 id. 26.

Sections 7*a* and 7*b* are violative of the provisions of the constitution, in that by the terms of the act it is attempted upon the part of the legislature to exercise judicial power, which power is alone vested in the courts. *Railroad Co.* v. *People,* 67 Ill. 11; *McNeally* v. *Gregory,* 13 Fla. 417; *United States* v. *Klein,* 13 Wall. 128; *Powell* v. *State,* 17 Tex. Ct. of App. 115; *Ziegler* v. *Railroad Co.* 58 Ala. 594; *Janesville* v. *Carpenter,* 77 Wis. 288; *Meyer* v. *Berlandi,* 39 Minn. 438; *Voight* v. *State,* 124 Ind. 358.

The amendatory act of 1893, under which the affidavit is required, makes an illegal exception in favor of building and loan associations, and thus renders the whole amendatory act void.   *Connolly* v. *Sewer Pipe Co.* 184 U. S. 540; *Low* v. *Printing Co.* 41 Neb. 127; *Luman* v. *Hitchens Bros. Co.* 90 Md. 14; *Lewis* v. *Webb,* 3 Greenl. (Me.) 326; *Durham* v. *Lewiston,* 4 id. 140; *Holden* v. *James,* 11 Mass. 396; *Piquet's Appeal,* 5 Pick. 64; *Budd* v. *State,* 3 Humph. 483.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that the amendment of 1893 (secs. 7*a* and 7*b*) violates section 10 of article 2 of the constitution of Illinois, which provides that "no person shall be compelled in any criminal case to give evidence against himself," and the fifth amendment to the constitution of the United States, which provides that "no person * * * shall be compelled, in any criminal case, to be a witness against himself." This contention must be sustained, unless the objection to the statute is removed by the immunity clause contained therein, which is as follows: "*Provided,* that no corporation, firm, association or individual shall be subject to any criminal prosecution by reason of anything truthfully disclosed by the affidavit required by this act, or truthfully disclosed in any testimony elicited in the execution thereof."

In order that a statute requiring a person to give evidence which might tend to incriminate him may be held valid, the immunity afforded must be broad enough to protect him against future punishment for the offense to which the evidence relates. (*Counselman* v. *Hitchcock*, 142 U. S. 547; *Lamson* v. *Boyden*, 160 Ill. 613.) The constitutional privilege is not, however, to be so far extended that it "may be put forward for a sentimental reason, or for a purely fanciful protection of the witness against an imaginary danger, and for the real purpose of securing immunity to some third person who is interested in concealing the facts to which he would testify." (*Brown* v. *Walker*, 161 U. S. 591.) The constitutional privilege that a person shall not be required to give evidence or to be a witness against himself is one of great value to the citizen; but the authorities, both State and national, recognize the rule that when the testimony sought cannot be used as a basis for or in aid of a prosecution which might be followed by fine or imprisonment or involve a penalty or forfeiture, by reason of an immunity statute, the reason of the rule ceases and the privilege cannot be claimed. Immunity statutes must be given a reasonable construction and not a strained and artificial one, and when the court can clearly see that a person is fully protected from the effect of his testimony he should be required to give evidence, even though it may show him to have been guilty of a criminal offense.

The defendant urges three reasons why the immunity afforded by this statute is not complete: (1) The immunity does not cover prosecutions under the Federal law nor under the law of the other States; (2) the immunity can not be conditioned upon the truthfulness of the disclosure; and (3) the immunity is not co-extensive with the constitutional privilege.

It is fundamental that the legislature of this State is powerless to pass an enactment making an act committed in a foreign State a crime punishable in that State, or

the legislature of a foreign State to pass an enactment to make an act committed in this State a crime punishable in this State. It is therefore evident that a violation of the statute above set forth in this State cannot be punished as a criminal offense in a foreign State, and that the immunity afforded by the statute is complete against a prosecution under the law of the other States of the Union. The Anti-trust statute of 1891 has no extraterritorial effect. While its terms may be broad enough to include trusts, pools, combines, etc., formed with parties residing outside of this State, the courts, in construing it, must necessarily confine it to those matters upon which the General Assembly has power to act, viz., trusts, pools, combinations, etc., formed within the State of Illinois.

In the construction of a statute the courts will exclude from the operation thereof subjects or classes upon which the State legislature has no power to legislate, although comprehended within the general terms of the act, unless the different parts of the statute are so connected that they cannot be separated without destroying the evident intention of the legislature. (*State* v. *Smiley*, 69 Pac. Rep. 199; *Supervisors* v. *Stanley*, 105 U. S. 305; *Commonwealth* v. *Gagne*, 153 Mass. 205.) In *State* v. *Smiley*, *supra*, it is said: "The general doctrine is, that only the invalid parts of a statute are without legal efficacy. This is qualified by the further rule that if the void and valid parts of the statute are so connected with each other in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature, the whole must fail. * * * The instances in which the application of the rule first mentioned most usually occurs are those where separable words, clauses, sentences or sections of the statute are stricken out, as it were, because constitutionally objectionable. However, the rule is not limited to such instances. It applies as well to exclude from the operation of the statute subjects and classes of things lying without the legislative

intent, although comprehended within the general terms of the act, as it does to exclude parts of the verbal phraseology." In *Commonwealth* v. *Gagne, supra,* it is said: "A law which is unconstitutional within certain limitations, if in terms it exceeds or fails to notice those limitations, may yet be entirely operative within its legitimate sphere and properly held to have the application which thus confines it. Indeed, where two governments, like those of the United States and the commonwealth, exercise their authority within the same territory and over the same citizens, the legislation of that which, as to certain subjects, is subordinate should be construed with reference to the powers and authority of the superior government, and not be deemed as invading them unless such construction is absolutely demanded."

If the statute be confined to its legitimate constitutional scope its proper construction only requires the affidavit to state whether or not the corporation upon whose behalf it is made had violated the statute by performing some one or more of the acts therein prohibited within the State of Illinois, and would not include, but would exclude, all acts which would connect it with any trust, pool, combination, etc., formed outside of the State, and which would violate the Anti-trust statute of the United States. The United States, under its power to regulate inter-State commerce, may legislate upon the subject of private contract in respect to such commerce, and has full and complete jurisdiction over trusts, pools, combinations, etc., so far as they relate to such commerce, but it has no jurisdiction over trusts, pools, combinations, etc., which relate to commerce wholly within a State, and it does not acquire any jurisdiction over that part of a combination or agreement which relates to commerce wholly within a State by reason of the fact that the combination also covers and regulates commerce which is inter-State. While it may control trusts, pools, combinations, etc., so far as they interfere with

inter-State commerce, so far as they interfere with commerce wholly within the State such trusts, pools, combinations, etc., are subject alone to the jurisdiction of the State.   (*Addyston Pipe and Steel Co.* v. *United States*, 175 U. S. 211.)   The fact that a corporation organized or doing business in this State may have entered into a trust, pool, combination, etc., in violation of the Anti-trust law of this State does not show or tend to show that it has entered into a combination or agreement in violation of the Anti-trust law of the United States; and this would be true even though the same corporation, in addition to its business carried on wholly in Illinois, was engaged in business outside of the State.   In making the affidavit the affiant is only required to take into consideration the acts of the corporation while engaged in business wholly within the State, and if, in connection with that business, it has not been connected with any trust, pool or combination within the State, or otherwise violated the Illinois Anti-trust statute, he can truthfully make the affidavit to that effect, although the corporation at the same time, in its business outside the State, has been connected with trusts, pools, combinations, etc., in violation of the United States Anti-trust statute, that being a matter exclusively within the jurisdiction of the United States and over which the State has no control and to which the statute of this State does not apply.   If, on the other hand, the affidavit should show a violation of the Illinois Anti-trust statute, no violation of the United States Anti-trust statute would be disclosed and no evidence be furnished thereby which would incriminate or tend to incriminate the party making the affidavit, or the corporation upon whose behalf it was made, under the United States Anti-trust statute.   The offenses created by these statutes are separate and distinct offenses, and the evidence which would support a conviction under one statute would be wholly immaterial and not sustain a conviction under the other.   The

offenses created by said statute can readily be distinguished from that of counterfeiting, and perhaps other crimes, upon the trial of which the evidence to sustain a conviction would be the same whether the crime was prosecuted in the State or Federal court.

But if it be conceded that there is a bare possibility that the affidavit might contain disclosures which would furnish evidence of a violation of the Anti-trust statute of some other State of the Union or of the United States, we think, within the meaning of the authorities, that such disclosure is not a real and probable danger, and does not fall within the danger which the constitutional privilege was intended to obviate. The case of *Brown* v. *Walker, supra,* is a case in which it was claimed that the immunity clause of the inter-State Commerce law would not afford protection against prosecution for the offense under the laws of one of the States disclosed in the examination, pursuant to the provisions of the Federal statute. Mr. Justice Brown, rendering the opinion of the court, reviewed the case of *Regina* v. *Boyes,* 1 B. & S. 311, and quoted with approval extensively from the opinion of Lord Chief Justice Cockburn. He says: "In the latter case it was suggested, in answer to the production by the solicitor general of a pardon of the witness under the great seal, that by statute no such pardon under the great seal was pleadable to an impeachment by the commons in parliament, and it was insisted that this was a sufficient reason for holding that the privilege of the witness still existed, upon the ground that, though protected by the pardon against every other form of prosecution, the witness might possibly be subjected to parliamentary impeachment. It was also contended in that case, as it is in the one under consideration, 'that a bare possibility of legal peril was sufficient to entitle a witness to protection. Nay, further, that the witness was the sole judge as to whether his evidence would bring him into the danger of the law, and that the statement of his belief to

that effect, if not manifestly made *mala fide,* would be received as conclusive.' It was held, however, by Lord Chief Justice Cockburn, that 'to entitle a party called as a witness, to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer,' although 'if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question.' 'Further than this,' said the chief justice, 'we are of opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things,—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice. The object of the law is to afford to a party called upon to give evidence in a proceeding *inter alios,* protection against being brought, by means of his own evidence, within the penalties of the law. But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice.'" And after holding the statutes of the United States are the supreme law of the land, and that immunity from prosecution for a crime disclosed by the party under a provision of the national statutes, would operate as immunity from prosecution for any offense against the laws of the State disclosed in the same proceeding, he further says: "But, even granting that

there were still a bare possibility that by his disclosure he might be subjected to the criminal laws of some other sovereignty, that, as Chief Justice Cockburn said in *Regina* v. *Boyes*, 1 B. & S. 311, in reply to the argument that the witness was not protected by his pardon against an impeachment by the House of Commons, is not a real and probable danger, with reference to the ordinary operations of the law in the ordinary courts, but 'a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct.' Such dangers it was never the object of the provision to obviate."

We conclude, therefore, that the officer making the affidavit, and the corporation in whose behalf the same is made, are fully protected by the statutory immunity from a prosecution by any other State or by the Federal authorities.

We do not understand the words "truthfully disclosed," contained in the immunity clause of the statute, to be a condition upon which immunity is to be granted, but, taken in connection with the context, they amount to no more than this: that if, in making the affidavit, in order to state the truth it becomes necessary to disclose a violation of the statute, there shall be no prosecution against the party making the affidavit, or the corporation on whose behalf it is made, by reason of such disclosure. In other words, the statute requires the answer to the letter of inquiry of the Secretary of State to be made under oath, which answer the statute assumes, when made, will be truthful, and it then declares, if in making such affidavit it is disclosed that the statute has been violated, the person making the affidavit, and the corporation on whose behalf it is made, shall be protected from punishment by reason of the disclosures contained therein.

The words "criminal cases," used in the State and Federal constitutions, have been construed by the courts

to extend to and include imprisonment, fine, forfeiture and penalty, whether to be recovered in a criminal or civil proceeding, and when an immunity statute is couched in the same language as the constitution, the language of the statute will receive the same construction as that of the constitution, and be held to grant immunity from imprisonment, fine, forfeiture or penalty. *Coffey* v. *United States,* 116 U. S. 426; *Boyd* v. *United States,* id. 616; *Counselman* v. *Hitchcock, supra; Brown* v. *Walker, supra.*

It is said that the amendment of 1893 is unconstitutional in this: that it is an attempt upon the part of the legislature to exercise judicial power, and that it singles out corporations as the only class upon which the statute is to act, and exempts individuals and partnerships from the operation thereof. These objections, in our opinion, are without force. The statute in apt terms provides the affidavit shall be filed in reply to the letter of inquiry of the Secretary of State or the penalty shall be incurred. The offense is the failure to file the affidavit in reply to the letter of inquiry. If the legislature may require the affidavit to be filed, as we think it may, we can see no valid reason why it may not provide that a failure in that regard shall subject the offending party to a penalty to be adjudged against it by the courts, without it being said that the legislature has exceeded its jurisdiction by exercising judicial power; and as a corporation exists or does business in this State only by virtue of a charter granted to it by the State or by permission of the State, we see no valid reason why it may not require a corporation existing or doing business in this State to file the affidavit provided by the statute, even though it is provided that individuals, when acting alone or in partnership with others, are exempted from so doing. The object of the statute of 1891, as amended, is two-fold: to prohibit trusts, pools and combines for the purpose of limiting production and fixing the prices of commodities within the State, and to have supervision and control over cor-

porations created or doing business in this State for the purpose of determining whether they are members of trusts, pools and combines. The placing of corporations in a class by themselves and requiring them to file the anti-trust affidavit, leaving individuals and partnerships simply liable to the penalties provided for by the act, is not an illegal or arbitrary classification, any more than is the requirement that State banking institutions shall file reports with the Auditor of State or insurance companies with the insurance department of the State.

It is also contended that the amendment of 1893 is unconstitutional, on the ground that it exempts from its operation corporations organized under the building, loan and homestead association laws of this State. The corporations organized under such laws differ essentially from corporations organized under the general statute for pecuniary profit, and we do not deem the provision found in the statute exempting these organizations from complying with the provisions of the statute special or class legislation, or as falling within the principle announced in *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540. The placing of building, loan and homestead associations in a class by themselves, for the purpose of taxation or otherwise, is a natural, and not an arbitrary, classification. (*Bunn* v. *People,* 45 Ill. 397; *Kilgour* v. *Drainage Comrs.* 111 id. 342; *Hawthorn* v. *People,* 109 id. 302; *People* v. *Hoffman,* 116 id. 587; *DeGraff* v. *Went,* 164 id. 485; *Lasher* v. *People,* 183 id. 226; *In re St. Louis Loan and Investment Co.* 194 id. 609.) In the *Lasher case* it is said (p. 231): "The legislature have power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation." In *Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203, it was held that the Illinois statute of 1897, whereby coal mines where not more than five men are employed at any one time are exempt from the operation of the act of May 28, 1879, providing for inspection, was not an arbitrary and

unreasonable classification, and that the amendment was a constitutional enactment.

It is urged that the act of 1891 is rendered unconstitutional by the amendment of 1897, and it is also said that the act of 1891 was repealed by an act entitled "An act to define trusts and conspiracies against trade, declaring contracts in violation of the provisions of this act void, and making certain acts in violation thereof misdemeanors, and prescribing the punishment therefor and matters connected therewith," approved June 20, 1893. (Laws of 1893, p. 182.) The questions here raised are somewhat akin to each other, and will be considered together.

The act of 1893 did not expressly repeal the act of 1891, and from a comparison of the provisions of the acts we are of the opinion that there is no such repugnancy existing between the two that the latter would effect a repeal, by implication, of the former. Furthermore, the legislature evidently did not intend to repeal the act of 1891 by the act of 1893, as upon the day upon which the latter act was passed the former was amended, and the act of 1891 was again amended in 1897. In the case of *Connolly* v. *Union Sewer Pipe Co. supra*, the Supreme Court of the United States had before it for consideration the act of 1893, and it was there held that the entire act was unconstitutional and void, as being in conflict with the provisions of the fourteenth amendment to the constitution of the United States, in this: that it improperly discriminated in favor of agricultural products or live stock in the hands of the producer or raiser. If the act of 1893 is void as being in conflict with the Federal constitution, as it, in view of the decision in *Connolly* v. *Union Sewer Pipe Co. supra*, must be held to be, it seems too plain for argument that it could not have worked the repeal of the act of 1891. *Raymond* v. *Hartford Fire Ins. Co.* 196 Ill. 329.

The amendment of 1897 to the act of 1891 was in the form of a proviso to section 1 of that act and reads as

201—17

follows: *"Provided, however,* that in the mining, manufacture or production of articles of merchandise, the cost of which is mainly made up of wages, it shall not be unlawful for persons, firms or corporations doing business in this State to enter into joint arrangements of any sort, the principal object or effect of which is to maintain or increase wages." Under the decision in the *Connolly case* it is clear that this amendment is unconstitutional and void, as being an unlawful discrimination in favor of the persons sought to be exempted by the amendment from the operation of the act of 1891, as amended by the act of 1893. If the amendment of 1897 sought to be incorporated into said statute is void, it necessarily would make no change in the original act, and that act would stand, as amended by the act of 1893, as the legislative will. The discrimination contained in the act of 1893, and that sought to be incorporated into the act of 1891, as amended in 1893, by the amendment of 1897, are of the same character, and both are obnoxious to the fourteenth amendment to the constitution of the United States. The obnoxious provision in the act of 1893 carried down with it the entire act, as the court held the obnoxious provision was so intimately connected with the subject matter of the act that it could not be separated from the body of the act without destroying the entire act. Such consequence, however, does not follow the failure of the amendment of 1897. The act of 1891, as amended by the act of 1893, was a valid statute. That act, as amended, and the act of 1897, are separate and distinct acts, passed by different legislatures, and the subsequent unconstitutional act, which is without force, can have no effect to overthrow and render void the legal and constitutional expression of the legislature as manifested by the act of 1891, as amended in 1893.

It is suggested the constitutional method of passing amendments in this State, which requires "the section amended shall be inserted at length in the new act,"

requires a holding to the effect that the section sought
to be amended is necessarily repealed, even though the
subject matter sought to be incorporated into the section
fails by reason of the fact that the amendment is uncon-
stitutional and void. We cannot agree with this view.
The amendment of 1897 does not, in terms, repeal sec-
tion 1 of the statute of 1891. If any part of the act of
1891 is repealed it must be a repeal by implication and
because the amendment is in conflict with the original
act or a part thereof. But the amendment is unconsti-
tutional and void. It therefore repealed no part of the
act upon which it was fruitlessly sought to be engrafted
as an amendment. (*Ex parte Davis*, 21 Fed. Rep. 396.) Re-
peals by implication are not favored, (*People* v. *Nelson*, 156
Ill. 364,) and in *Childs* v. *Shower*, 18 Iowa, 261, it is said
(p. 272): "If the repealing clause was positive and uncon-
ditional and under circumstances which indicated a de-
sign to repeal the old law at all events, it would doubtless
be operative, though contained in a statute which was
unconstitutional. So, on the other hand, it seems clear
that an unconstitutional enactment would not repeal, by
mere implication, a former law."

We therefore conclude, both the act of 1893 and the
amendment of 1897 being unconstitutional and void, they
do not repeal, by implication, the act of 1891, or any part
thereof, as amended in 1893.

That the anti-trust legislation of this State should be
upheld if it can be construed in harmony with the funda-
mental law, both State and national, must be conceded
by all. As said by the learned justice who wrote the
opinion in *Brown* v. *Walker, supra:* "Instead of seeking
for excuses for holding acts of the legislative power to
be void by reason of their conflict with the constitution
or with certain supposed fundamental principles of civil
liberty, the effort should be to reconcile them, if possi-
ble, and not to hold the law invalid, unless, as was ob-
served by Mr. Chief Justice Marshall in *Fletcher* v. *Peck,*

10 U. S. (6 Cranch, 87,) 128, (3, 162, 175,) 'the opposition between the constitution and the law be such that the judge feels a clear and strong conviction of their incompatibility with each other.'"

The question of the constitutionality of the original act of 1891 is not a new question in this court, but is one which was passed upon in the case of *Ford* v. *Chicago Milk Shippers' Ass.* 155 Ill. 166, and the decision in that case has been referred to with approval in the case of *Harding* v. *American Glucose Co.* 182 Ill. 551, and the act was there held to be constitutional.

After having given the questions raised on this record the fullest consideration we have been able to give them within the time at our disposal, we are of the opinion that the amendment of 1893 to the act of 1891 is valid, and that the act of 1891, as so amended, is free from constitutional objections, and should be sustained.

The judgment of the circuit court of Cook county will therefore be reversed and the cause remanded to that court for a new trial.                              *Reversed and remanded.*